Good morning. How are you? Good. How are you doing? Much better. You feeling better? Good. Good. Are you ready? I am. Is everyone a donor for this case? Yeah. It's a big crowd. I guess it's happy U.S. Attorney's Office is here. They came to see Ms. Friedlander again. Your Honors, may it please the Court, my name is Lisa Friedlander and I am here on behalf of Thomas Hoffner Jr. If I could reserve three minutes for rebuttal. Your Honors, the Court should permit Mr. Hoffner and those others whose cases are listed in our related cases section of the brief permission to file second or successive 2255 motions challenging their mandatory guideline sentences under Johnson. Why isn't your request tantamount to asking for an extension of a rule rather than application of a rule? Well, thank you for getting right to the gut of it. I mean, as I'm sure you know, and as has been discussed in the briefs, this Court can apply the principles of a prior decision if they apply without it being an extension, even in a different context. The context here is wholly inappropriate, Your Honors, to apply it to a system of guidelines where it's not a statute, it's a guideline. And so the issue then, of course, is to what extent the mandatories are like the discretionary guidelines where it doesn't apply. But since the Court has said it does not apply to the discretionary regime, why wouldn't it be creating a new rule or extending a new rule if it went so far as to not only create it to a different statute but to a guideline regime? Well, let me answer that in two parts. First, this Court has already done just that in Ray Grant when it applied the principles announced in Miller v. Alabama to Mr. Grant's case under the mandatory guidelines, even though, as was argued at the time, the mandatory guidelines were mandatory but there were opportunities for sentences outside of a life without parole sentence, which was not the case either in Miller v. Alabama or in Jackson, its companion case. And so my first answer is this Court has already done just that. That is the rule of law in the circuit. You can take the principles of a case and apply them in another context. The Court didn't only do that with respect to the mandatory guidelines in Ray Grant. It did the same thing in Ray Pendleton and in Ray Baines with respect to the Pennsylvania statute, which was not at all like, I shouldn't say not at all like, but was substantially different from the life without parole statutes involved in Miller and in Jackson. But more importantly in this context, and Your Honor, you mentioned Beckles, I think Beckles really confirms our argument. I understand your question. You understand that the language is the same. Beckles confirmed that applying Johnson to the mandatory guidelines remains an open question. It remains an open question because the United States Supreme Court has not yet ruled on it. Under 2244B and 2255H, which this Court is applying in this case, it's not a requirement that the Supreme Court have applied the rule in the very context that the petitioner seeks to take advantage of it. And I think that Miller, I mean, I think that Grant and Baines are a good example of that. But if you look at Beckles, the motivating factors in the decision in Beckles and the first of all, the holding expressly limits the Beckles decision to the advisory guidelines. But the explicit reasoning in Beckles distinguishes at every turn the advisory guidelines from the mandatory guidelines. But the government's point is that a motion that contains an open question cannot contain a new rule. There's simply no law to support that, Your Honor. The Supreme Court has said repeatedly, and the cases are cited at page 8 of my reply brief, that the Court can apply the principles from a prior decision in a new context without extending that rule. And the Supreme Court itself has done that in the context of aggravating circumstances, applying them to aggravating circumstances that are similar but not the same. I mean, I understand the government's position, but there simply is no law to support it. And in fact, there's such an experience. Why wouldn't the statute itself and perhaps Teague, a case which always makes my hair catch fire, here I am, why wouldn't that support the argument? Well, Your Honor, Teague, I mean, Teague really is talking about whether the rule is substantive and therefore retroactive, not whether the rule applies in the first instance, which is really a different set of law. It's not the idea that a rule, the principles, because I really want to focus on the principles. Okay, we talk in shorthand, the Johnson rule, the Johnson this, but it's the principles underlying the Johnson rule that are the concerns, the twin concerns about fair notice and arbitrary enforcement of the residual clause. And those principles apply with equal force to the mandatory guidelines. You keep referring to these as the mandatory guidelines. In Mr. Beckel's case, his guideline range was 360 a life. The district court imposed a 240-month sentence. And the district court didn't adhere to the guidelines. In fact, it gave him a 10-year break. Well, Your Honor, the district court did adhere to the guidelines. And the fact that Mr. Hoffman received a departure in this case doesn't change the character and nature of the guidelines themselves. And the Booker Court said that when it was addressing the Sixth Amendment. Under ACCA, there would be no discretion. The judge would have had to give him 15 years in this case. That's not the case. I mean, even if somebody's eligible for a 15-year mandatory sentence under the Armed There are still departures, for example, 3553B, 5K. Not 5K, 3553E. E, I'm sorry. Yes, Your Honor, because it's statutory. But there are still means to get underneath the mandatory minimum in the same way that the departures operated in the guidelines. And the departures in the guidelines, including the departure in 4A1.3, was mandated in the same way that the guidelines were mandatory. It was governed by policy statements and commentary that were mandatory and had, as the Supreme Court has reminded us, the force and effect of laws. The district court did not. And this is significant because this is what Beckles focused on, is that one of the is that under a mandatory regime, the district court could not disagree with the guidelines, could not impose a different sentence based solely on its disagreement with the commission's views. It was bound within the four corners of the guidelines, even with respect to departures. That's very different from the variant system that we have now. Listen, the judge could depart if they found that something was not considered in the heartland of the guidelines, right? There's an exception to that. The judge could depart. And there were findings and there was a body of law that governed those departures. The distinction, however, is that it was all within the guidelines and it was reviewed as such. But what's happened here, where the guidelines overstated the seriousness of its criminal history? In this case, that's precisely what the court found. How bad a joy is that when the judge can say the guidelines overstate just how bad this guy is and not going to follow him? I mean, the guidelines prescribed that departure. There were findings of fact that the judge had to make to grant that departure. It was not the discretion of the district court wholly. But more importantly, and I understand why the court is focusing on the departure in this case, but many of the other people who were seeking authorization did not have departures. Not one from the Western District of Pennsylvania had a departure. And the fact that an individual received a departure cannot govern this court's determination about whether a rule applies in a certain context, that being the mandatory guidelines regime, or whether the rule has been made retroactive and is substantive based on the facts of a single case. The only significance, if there is any, of the departure that Mr. Hoffner was talking today is perhaps if he's able to file his 2255 motion in the district court and the district court looks at that in determining whether Mr. Hoffner can show prejudice. What are you asking us to do? There's been some back and forth in terms of how far we should go. What are you asking us to do in this case? What I'm asking this court to do is to find that Mr. Hoffner has satisfied the prima facie showing in this case and allow him and others to file their successive 2255s. What the court would have to do to reach that decision would have to find that there's a new rule of constitutional law, Bing Johnson, that the rule has been made retroactive by the Supreme Court and that the rule applies in this case. All three of those statutory requirements, the burden to prove those statutory requirements is a prima facie case. And I don't want my insistence on the statutory standard of prima facie to reflect a lack of confidence in the issue, the outcome, or the law. But it's very important for another reason, and it's the reason why the statute was written this way, is because if this court denies authorization, there's no review. We have a situation where the circuits are split, four to one in favor of Mr. Hoffner. The district courts are split and all over. And if this court were to erect a higher burden and find that there was no prima facie case, and I suggest the fact that there are a number of courts, circuits and district courts, that have ruled consistently with the view that I'm presenting to the courts today, that should be enough to surmount the prima facie burden. But if this court were to deny in a situation where they're split in the circuits and there's no potential for review, that would also be extremely unfair, and would really highlight the problems with the procedure that's been taken care of. Why couldn't you file for cert and ask the Supreme Court to take a look at that ruling? Because the statute precludes review of any type of the denial of the authorization to file a successor. It's in 2244B3E, I believe. I just can't see a situation where there's a split in the circuits, a split among the district courts, that many courts have taken this view, and that this court would find it difficult to believe that Mr. Hoffner has surmounted the prima facie burden. Can I just ask you a question? Sure. In some good way, isn't it? Relating to prima facie showing, if there's a prima facie showing, in other words, there's a possibility of a possible merit. I gather from what you said earlier, to some extent you want us to get into the merits. Should we just not send it back to the district court? There's a whole bunch of these in the district courts. No, Your Honor. I think our briefs, Mr. Zosmer and I both went beyond the bounds of what's really properly before this court in our briefs, because I think we, I mean, I won't speak for you, Bob, but I felt like this might be our only shot to get the arguments out to you. But the question is very limited, and my answer to Judge Estrepo is exactly what I'm asking. For this court to find, as the statute requires, that a prima facie case has been made and authorize the filing of the second petitions, and I see my red light is on, but if I could finish my sentence, the district court will again determine whether Mr. Hoffner has satisfied the statutory requirements. That's the way the statute is written. This court is supposed to take a quick look in a short period of time to determine if there's anything there. There's something here, and many courts have so found. This court should grant authorization, allow the district courts in this circuit to decide for themselves the statutory requirements as the statute requires them to do, and those decisions then will be subject to full appellate review. And I understand, and I'll sit down after saying this, but I understand that there is some concern, and Mr. Salzner has noted it in his brief and previous filings about a burden on the district courts. This is what the courts do. They decide cases. In the Miller context, this court granted authorization, which in my district alone sent back to the district court over 100 cases to do exactly what I'm  They decide cases. They decide the merits of the statute in the first instance, and if they feel that the petitioner has overcome the burden, to move on to the merits of the case. If there are any questions, I'll be back on rebuttal. I'm sorry to threaten. It's only because he likes you. Good morning, Your Honor. May it please the court, Robert Salzner on behalf of the government. Welcome back. It's good to see you back. It's very good to be back, Your Honor. Thank you very much. Your Honor, what this is about fundamentally are the restrictions that are placed on successive petitions by the AEDPA. I don't have to tell this court about it. You've all struggled with it for many, many years, but Congress made the clear judgment to severely restrict successive petitions. It may not be the rule any of us would have written. Maybe some of us would have done it differently, but it's very clear. But all that needs to really be made is a so-called prima facie showing. Now, our Goldbloom case from about ten years ago says it's reasonably likely that the application satisfies the stringent standards of filing second or successive. But doesn't that really mean the same thing that Judge Elrod put in her dissent in the Fifth Circuit case, that you need a sufficient showing of possible merit? And hasn't Ms. Friedland done that? Well, actually, I don't think so. First of all, I think the standard, as Your Honor said, in this court is reasonable likelihood. I think the same thing. Reasonable likelihood doesn't look greater than 50 percent. We've said that in numerous other instances. Yes, but not in this instance. No, it's timed, isn't it? Fine. Accepting even possible merit. This has no merit. The question is... Whoa, whoa, whoa, whoa. You're saying it has no merit? No possible merit. I am saying that on the fundamental question, we have to, as Ms. Friedland just said, it is a very simple, straightforward question here, which is, has the Supreme Court announced a new rule that it has made retroactive on collateral review? That's the difficult standard that almost never meets. And so, Your Honor, respectfully, I say there is no merit to that. It is a straightforward, simple question. And what we see is that the Supreme Court has never applied Johnson to the mandatory sentencing guidelines or any guidelines. Let me ask you a question, and I don't mean to put you in a bind, but you have an incredible credibility. It has with me, with the entire court. I realize you're an advocate, but let me see if I can try to get you to think for a second with me here. Let's assume that he had never filed... I'm glad you finished the sentence. I can do it, Your Honor. For a second, you can start with me. Let's assume that he had never, ever filed this action. How often had he? And five years go by, and the Supreme Court comes down with a decision that specifically says that the rule of Johnson is retroactive to the guidelines that existed before Booker. And Hoffman comes in, he files a request for a successive petition, and he says, look, there's a new rule of constitutional law. It's expressly made retroactive. I want to take advantage of it. I want to take advantage of it. I ask for permission to file a successive petition. Are you seriously telling me that you wouldn't have argued at that point, I'm sorry, but you're out of time, you should have filed within one year of either Johnson or Walsh at the latest, but your time is up. It's too late to file. I can't imagine the government would not have taken that position. To be fully honest, Your Honor, if... Now, of course, the standard for a first petition is different. So if the Supreme Court were to announce... Let's assume the same thing as a successive petition he's coming in. He did not file this petition. He wants to file a successive petition five years from now when the court comes down and makes Walsh retroactive to the mandatory guidelines. If the Supreme Court makes Johnson retroactive to the mandatory guidelines, that will be a new rule. That's what we say in our brief. I think that personally, if Your Honor is asking me that, because as we stand here now... You would say that he was out of time if he came in five years from now, he would not have filed it now. He would not, because there would be a new rule that, presumably, he filed his petition within one year of that new Supreme Court announcement that Johnson applies to mandatory guidelines. Right now, looking at Beckles, it's very clear that whether Johnson applies to mandatory guidelines is an open question. It would be the height of disingenuity for me to then show up later if the Supreme Court were to make that ruling and say, oh, no, that's not a new rule. That's just an old application of Johnson. That's not the government's position. The open question itself suggests a form of patient showing. Well, no. Again, we look at the lay of the land right now, and what's so difficult about a successive petition, as Congress has made clear, is the entire Supreme Court case that makes this explicit. The Supreme Court itself has to declare the new rule and has to declare the rule retroactive. And that simply has not happened. If this were a first petition, this court would have more leeway, as Your Honors know. And this court, like so many others, has proved itself expert at analyzing whether new rules apply retroactively in first petitions. But you are not permitted to do it, according to Congress, for a successive petition. What do you make of Ms. Friedland's argument that several other circuits have ruled the other way in terms of making a Pernafosshi case? Well, the circuits that rule the other way, at least in published decisions, are all predating Beckles. And, of course, what's interesting is that the government agreed, before Beckles was decided, that Johnson should apply to even the advisory guidelines. And what the Supreme Court said to all of us in Beckles is, not so fast. And laid out exactly why the vagueness holding of Johnson does not concern at least the advisory guidelines. So now we have to respect the Supreme Court. The key word throughout was the word indeterminacy. So in Johnson, there was an indeterminacy with regard to what is a crime of violence or a violent crime. And it applied when you had a mandatory scheme under ACCA. When you have pre-Booker, don't you have, in effect, a mandatory scheme? No. And, again, it's been pointed out here that Hofner is the living example of that. It was mandatory in the sense that judges were required to apply the guidelines and impose a sentence within the range unless they found a basis for a departure. But the same is true of the ACA, though, isn't it? Excuse me? Isn't the same true of the ACCA? No. Safety valve is there in statute? For the ACCA, the government must make a motion. There's no safety valve. Only a government motion under 3553E would permit a lower sentence. And so that was quite mandatory. But, more importantly, if I want to get to... It was mandatory unless we weren't obligated to sentence within it. Well, that's right. But the bigger point that I think is so important is we have to look at the vagueness ruling of Johnson, which is what they're trying to apply to the mandatory guidelines. And, certainly, my friend, Ms. Freeland, poses very good arguments as to why it might be that vagueness applies to the mandatory guidelines also. The problem is, in the successive petition context, it's not good enough. So what Beckles tells us is it says there's a specific focus here. I don't know, Your Honor, if they use the word indeterminacy or not, but what they do say very clearly in Beckles is a statute that changes a punishment is subject to a vagueness challenge if it fixes the minimum and maximum terms. That's now the focus under Beckles. That's what the government had wrong before Beckles. That's what these other courts before Beckles did not know about. We now know what we need to focus on, which is, is the law we're dealing with one that fixes the minimum and maximum? And if it is, and if it's vague, then it's subject to a vagueness challenge. It does fix the floor, so to speak, if you go to Category 6, right? So what happened to Mr. Hoffner here, he was in Category 6 because he was a career criminal, so he had a fixed floor of at least 60 a life unless the district court found a basis for a departure within the guidelines. But it's the unless, the means, the only thing that has ever fixed the minimum and maximum is a statute, and a statute is what was at issue in Johnson. But then I get to my next very important point. So we take the teachings of Beckles as to what to look for in terms of whether something is vague or not, and when we apply it to the mandatory guidelines, we see at best we have a healthy debate right now. Now the government's view is that, according to Beckles, mandatory guidelines wouldn't be subject to a vagueness challenge either. My friend says the opposite. She has very strong arguments on that point. But what we have, and this is the most important thing, what we have is an argument. We cannot sit here and definitively say what the answer is for mandatory guidelines. As Chief Judge Becker used to say, you're talking about the merits of the next case. All that Ms. Friedland needs to do is meet a low threshold of prima facie case that, in effect, to use her words, the principles of Johnson apply in a mandatory setting under ACCA and they apply also in the pre-Booker mandatory setting under the guidelines. She has to make a prima facie case, Your Honor, that Johnson applies to the mandatory guidelines and, therefore, the Supreme Court itself has announced a new rule and made a retroactive. Where we're having this debate over, as Your Honor says, the next step, by definition we don't have a clear Supreme Court ruling that is what Congress says is the only thing that can be raised in a successive petition. Is the only circuit that really supports you is the 8th and Donnell? The 11th Circuit supports us in Griffin as well. And, again, the other presidential decisions predate Beckles. In terms of the way the statute is set up, it's not as simple as saying, oh, let's send it to the district courts with a prima facie claim. It comes back here no matter what. If we parse through the statutes, 2255H says you can't do a successive petition unless you have a new rule of constitutional law made retroactive by the Supreme Court. The Supreme Court says we ourselves have to announce that. Now, what 2244 does is it says the 3rd Circuit, the Court of Appeals... The B2A says it relies on. Right. Is it really that much different than it contains under 2255H? No, I don't believe it is. So what 2244 does is it says, all right, the Court of Appeals is the gatekeeper and it can send it to the district court for the first determination if there's a prima facie case. But, of course, it then comes back on appeal because if a lower court were to hold that there is a new rule of constitutional law made retroactive that is a fundamental requirement under 2255H, that then comes up on final appeal. So this court does not avoid this issue. The only question right now, I agree, is there a prima facie case such that every district court in the circuit should now address this? And our position on that is no. From the very tenor of this debate, I think it's clear that there is no definitive answer. And where there is no definitive answer on the ultimate merits, there obviously is no new rule that's been made retroactive. So she's trying to tee up what gets you to ultimately the definitive answer. She is. The so-called next case. The next case. And the problem is Congress says you don't get to do that in this context. What do you make of Justice Sotomayor's language in the opinion? In Beckles. Oh, sure. I mean, certainly when this issue is presented, since Johnson applied the mandatory guidelines, we know her vote. I mean, we know one vote. She makes it clear in her concurring opinion. So that's her view. And she would have applied that. But nobody objected to that. They didn't. In what sense, Your Honor? I mean, no. The opinion of the court, nobody else said, wait a minute, whoa. That's not necessarily correct. She's saying this decision, this hasn't been decided in this case. Sure. But, Your Honor, I would submit that that is far from a holding of the Supreme Court. We agree. But the point is it hasn't been foreclosed by the Supreme Court. In other words, pre-Booker mandatory guidelines are in play with regard to whether Johnson applies. I fully agree. And to say something has not been foreclosed and to say something is in play is the definition of saying the Supreme Court itself has not announced a new rule. Why is it also the definition of prima facie showing? Because it's just so apparent in this case that there's been no announcement of the new rule that she has to rely on. That depends on how you define the rule, though. If the rule is the Johnson rule, the rule's been announced. The problem is the extent to which Johnson governs the mandatory guidelines. And that's what you're saying. That's an extension of the rule because Johnson's not the mandatory guidelines of the statute. And Beckham's made it very clear that the guideline regime we're under now is not the same as the mandatory guidelines. The rules have been. I guess it depends on the lens in which we focus and what level we look at the rule. Is the rule just that the language is sufficiently nebulous that it strikes down the characterization that flows from that language, the ACCA or Curt Offender? Or is it that we apply the rule, the nebulous language, the ambiguous language, at the guideline level and it doesn't matter that before it was only a statute? Well, the furthest that this court or any other court has gone is to say the Supreme Court has to announce a new rule or you can understand the new rule from two Supreme Court decisions read together. That's as far as the court has gone. This court nor any other court has ever said we can define a new rule that permits a successive petition based on extrapolation and extension of a Supreme Court decision. It's been very plain that that is not the case. I don't take any real pleasure in standing here and saying that people like Mr. Hoffner aren't entitled to relief, but this is Congress's doing. When they created this rule that the Supreme Court itself has to announce a new rule and make it retroactive, everyone knew they made it vanishingly impossible. And you can count on one hand the number of successive petitions as a result that have been authorized by this court in the 20-plus years since the ADPA. That is the function here. Johnson turned out to be that incredibly rare exception where it not only announced a new rule as to the statute, which was a substantive rule and therefore applied retroactive, and the Supreme Court itself got around within a year to announcing its retroactivity. It's the only time it's happened. And so people who complain about this, and I hear and I understand Ms. Freeland's statement that she said it's quote that a position needs to be presented. Environment and receptive audience. Excuse me? Environment and receptive audience. Could be, could be. So the final thing, if I could just take just one minute to say, which is that if we do get to that next case and get to the merits, I think we do have a strong position that Johnson does not apply to the mandatory guidelines. Again, we now have to be informed by Beckles, and thus the government itself has shifted position on this when admonished by the Supreme Court as to how to look at provisions and decide whether they're constitutionally vague or not. So we do maintain that position, but the most important thing, and I think what this is all about, is that the Supreme Court hasn't resolved it. We're having a debate that itself proves that. Thank you so much, Your Honor. Thank you. So he's credible and I'm threatening. I'm going to have to live up to that one. Touché. Live up or live down, that makes no difference. A couple of things. I mean, sometimes when I'm talking about this issue and reading about it, the cases on both sides, it's as if the two sides are reading different cases. The guidelines were mandatory. The Supreme Court told us that's true. The fact that there are departures, irrelevant. The fact that Congress didn't enact them, irrelevant. And Booker, as Justice Sotomayor noted, Booker said that the mandatory guidelines fixed the permissible range of sentences. Mr. Zeldzner would like to say that the mandatory guidelines did not do that, but the Supreme Court has already told us that it did. I understand the quandary. I understand the questions. But when you put together the principles that the Supreme Court relied on in Johnson, together with Beckles and Booker, there is, I mean, I won't say there's no argument on the other side, as Mr. Zeldzner has, but there is no doubt that we've made a prima facie showing in this case. At every turn, the Beckles court distinguished the advisory guidelines from the mandatory guidelines. That's just right, crafting a good opinion. Decide only what you need to decide today, nothing further. Your Honor, that may be one of the reasons Justice Sotomayor noted that the court stayed with a formalistic distinction between advisory and mandatory guidelines. I understand that if the case goes up to the Supreme Court on mandatory guidelines, we know what Justice Sotomayor's vote is, but it's going to be awfully difficult for the other justices to run away from the opinion that they wrote in Beckles that distinguished the features of the mandatory guidelines at every turn. That's precisely why Judge Sotomayor made the statement that she did about the formalistic distinctions between the guidelines. Judge Ambrose, you mentioned the Arnick dissent, Judge Elroy. The language that she uses there is that the rule substantiates her claim. When you look at Johnson, and when you look at Beckles, and when you look at the residual clause in the mandatory guidelines, fair notice. Under the mandatory guidelines, there was a right to fair notice. No longer, Beckles says, under the advisory guidelines. So the fair notice principle of Johnson applies to the mandatory guidelines. With respect to arbitrary enforcement, and let me just back up for a moment. With respect to the advisory guidelines, the reason that the Beckles court said that fair notice and vagueness was not, that they weren't amenable to vagueness doctrine, is that you could write perfectly clear guidelines, and a judge would still be able to disagree with them and impose whatever sentence he or she wanted to. With respect to arbitrary enforcement, the reason that Beckles found that the district courts did not enforce the guidelines is because they were merely advice, they were merely a guide. There are numerous statements in Beckles and in Booker that demonstrate that the mandatory guidelines were not just mere advice. It was just not another thing that a judge could consider. They were binding, they had the force and effect of laws, and this court has recognized that in Doe, by saying that there's no doubt that the mandatory guidelines had the force and effect of the law, and that a sentence imposed erroneously under them was substantively in violation of the law. I see my time is up. I hope that your honors have gotten enough today to get you over the minimal hurdle of pain facial showing. I do believe when we get to the district courts, and perhaps with the development, the further development of the law in this area, that we'll be able to satisfy the definitive, get the definitive ruling that Johnson applies to the guidelines. Johnson applies the mandatory guidelines cases. Thank you. I'm not sure when. I've been here for a lot of years. Twenty-three years? How many years? Seventeen. I'm not sure I've seen an argument with both sides as ably represented. This was really just a delight, but two really fine lawyers. We had, you might give me a secret, high expectations of those of you coming in We weren't disappointed. It was really just a wonderful argument. The folks in the courtroom, don't assume this is what our arguments look like. It doesn't usually look like this at all. You got a rare treat today. Thank you very much for a wonderful argument. Thank you, your honor.